## CIRCUIT COURT OF LOUDOUN COUNTY

Patricia A. Kiefer

    v.

Donald L. Mikovch et al.

    v.

John H. Marino et al.

June 1, 2004

Case No. (Chancery) 21736

BY JUDGE JAMES H. CHAMBLIN

This cause came before the Court on April 12–15, 2004, for hearing on the Amended Bill of Complaint filed herein by the Plaintiff, Patricia A. Kiefer, and on the Cross-Bill filed by the Defendants, Donald L. and Wanda Jean Mikovch.

At the conclusion of the hearing, I found, for the reasons stated from the bench that there was no trespass by any defendant upon the property of Kiefer, and, in any event, there were no damages incurred by Kiefer as a result of the alleged trespass. Kiefer is not entitled to recover costs incurred to prevent future trespass or for damages.

The other issues raised in the Amended Bill of Complaint were taken under advisement. The issues are as follows:

1. Whether this Court should enter a declaratory judgment construing that the deeds and writings relied on by the Defendants, Donald

L. and Wanda Jean Mikovch, William M. Bond, Jr., Parkton Woodland Services, and Weaber, Inc., (hereinafter "Defendants") provide no basis for asserting easement rights or other legal rights to traverse Kiefer's property;

2. Whether this Court should enjoin the Mikovchs temporarily and permanently from using the "gravel road" across Kiefer's property; and

3. Whether Kiefer is entitled to an award of costs incurred to prevent trespass by the Defendants, including approximately $525.00 in constructing a locked gate across the gravel lane on her property, and in connection with this action, damage to the Kiefer property. As mentioned above, I have ruled that there was no finding of a trespass by the Defendants, and even if so, no damage to Kiefer's property.

The issues raised in the Cross-Bill filed by the Mikovchs are as follows:

1. Whether an easement to Route 683 over the lands of Patricia A. Kiefer, John H. Marino, Travis Dean Reed, Caroline M. Reed, John Robert Harter, II, David Michael Brooks, William R. Johnson, and Carol M. Johnson, (hereinafter "Cross-Defendants") for the benefit of the Mikovchs was created either by grant, prescription, or necessity;

2. Whether an injunction should issue requiring Kiefer to either remove the gate blocking the gravel road or to provide the Mikovchs with a key or means of opening the gate;

3. Whether the Mikovchs are entitled to *pendente lite* injunctive relief by requiring Kiefer to provide access to the gravel road leading to the Mikovchs' property during the pendency of this suit; and

4. An award of attorney's fees and costs.

For the reasons that follow, the Court finds that the Mikovchs do not have an easement from their property on the west side of Short Hill to Route 683 through the lands of the Cross-Defendants by either public road, express grant, easement by necessity, or easement by prescription.

The easement for ingress and egress claimed by the Mikovchs is described in three parts:

1. The "gravel lane" from Route 683 going east toward Short Hill Mountain to the property owned by Webb (not a party);

2. The "woods road" running from the "gravel lane" on the Johnson property through the land owned by Brooks to the Mikovch property;

3. The "border trail" running generally along the boundary between the Mikovchs and Travis Dean Reed and Caroline M. Reed; a portion of it going over the Reed property as shown on the 1984 plat of James C. Allison. (Plaintiff's Exhibit 28; Defendants' Exhibit 3.)

*I. Public Road*

A public road was created by order of the Loudoun County Court entered June 10, 1890 (Plaintiff's Exhibit 77) in the Riley Road case. The public road is designated on the plat pursuant to the second survey of James Grubb, Surveyor, as three straight lines from "I" to "L." (Defendants' Exhibit 38.) However, there was no evidence presented that a road was ever established over the designated lines from "I" to "L" as shown on the plat. The road identified by the Mikovchs, as the "gravel lane" does not follow the three straight lines from "I" to "L" on the plat, nor was there evidence presented that the public used the "gravel lane" or the road from "I" to "L". Furthermore, there was no evidence that the county or state ever maintained the "gravel lane" or made those travel ways a part of the secondary road system. The only users of the "gravel lane" are found to be the owners of the lands through which the lane traverses, owners who have recorded easements, and the Mikovchs (who have no recorded easement).

Ms. Kiefer offered evidence (which was not refuted) that her property was subject to an easement over the "gravel lane" for the benefit of landowners Harter, Brooks, Johnson, and Webb. (Webb is not a party to this suit; his land lies east of where the Mikovchs claim their easement goes off over the Brooks property.)

Mere use by the public does not make a road a public road. The road needs to be accepted as a public road by an entry on public records (of the county) or by (the county) assuming the duty to maintain it. See *Bradford v. Nature Conservancy*, 224 Va. 181, 199 (1982).

Here, there is no evidence of use of the "gravel lane" or the "I" to "L" road by the public. There is, however, evidence in the public records, namely, the County Court order of June 10, 1890, of the opening of the "I" to "L" road as a public road. There is no evidence that the county or the state after passage of the Byrd Act in 1932, ever maintained the "I" to "L" road as a public road. At most, there is a court ordered opening of a public road in 1890 from what is now Branchriver Road (Route 683) at point "I," being somewhere near the southwest corner of the Kiefer property in or close to Route 683, running eastward in three straight lines ("I" to "J," then "J" to "K," then "K" to "L") to point "L" somewhere on or near the Webb property. The present location of the road from "I" to "L" cannot be determined from the evidence presented.

No current survey of the "I" to "L" line was offered in evidence. No evidence was presented to allow the Court to determine where "I" to "L"

lies in relation to the properties of Kiefer, Marino, Harter, Johnson, Brooks, or Webb. There is absolutely no evidence that the public road opened by the 1890 court order from "I" to "L" continues from Route 683 to the Mikovch property.

In *Gaines v. Merryman*, 95 Va. 660, 663-64, 29 S.E. 738 (1898), it is said: "The law with respect to public highways is well settled. In the case of *Commonwealth v. Kelly*, 8 Gratt. (49 Va.) 632 [1851], it was held that the mere user of a road by the public for however long a time will not constitute it a public road; that a mere permission to the public, by the owner of the land, to pass over a road upon it, is, without more, to be regarded as a license, and revocable at the pleasure of the owner; that a road dedicated to the public must be accepted by the county court upon its records, before it can be a public road; and that, if a county court lays off a road, before used, into precincts, or appoints an overseer or surveyor for it, thereby claiming the road as a public road, and if, after notice of such claim, the owner of the soil permits the road to be passed over for any long time, the road may be well inferred to be a public road." *See also, Terry v. McClung*, 104 Va. 599, 52 S.E. 355 [1905]; *Lynchburg Traction etc. Co. v. Guill*, 107 Va. 86, 57 S.E. 644 [1907]; *Board of Sup'rs v. Manuel*, 118 Va. 716, 88 S.E. 54 [1916]; 17 Am. Jur., *Easements*, § 58, p. 970.

Above quoted in *Stanley v. Mullins*, 187 Va. 193, 200-01 (1948).

Even though "I" to "L" was opened by court order as a public road, there is no evidence that it was ever used as a public road. A court order establishing a public road, without more, does not create a public road in perpetuity. No evidence was provided that the county authorities recognized the proposed route as a public road or made appropriation for its location, construction, or maintenance. There is no evidence that "I" to "L" is even a traversable route for a public road, or that it ever was such.

Roads may shift from the path as initially laid off, but the "gravel lane" is located along a significantly different route than "I" to "L". This is not a case where a public road was laid off and opened by court order and then gradually shifted to its present location. It is more probable that the "gravel lane" was created by the owners of the properties it services as a means of access to their properties rather than a public road to connect

with "other roads at the foot of the Short Hill" (as stated in the original petition in the Riley Road case; see Defendants' Exhibit 30).

The Mikovchs' reliance on the June 1890 court order creating a public road for access to their property is misguided. The June 1890 order refers to a road marked as "I" to "L" on the second survey of Grubb. However, the Mikovchs provided no evidence for the Court to determine where "I" to "L" is located today in relation to the present property lines. There is a conspicuous lack of recorded documents offered into evidence.

In any event, there is no evidence from which the Court may determine that "the road from State Route 683, which traverses the property owned by Kiefer, Marino, Harter, Johnson, and Brooks (*i.e.*, the "gravel lane") is the public road opened by the 1890 court order. If there is a public or community need for such a road, the Mikovchs or others need to pursue an alternative method for its establishment.

Therefore, the Mikovchs have no right of access over the "gravel lane" by claiming that it is a public road.

*II. Express Grant*

The Mikovchs make two arguments regarding their easement on the "gravel lane" by express grant. They allege they received an express grant to use the existing road from State Route 683 to their property in their deed, and, furthermore, a deed in 1903 gave them an easement over the Brooks' property.

The deed dated December 31, 1982, from Harry C. Colwell et al. to Donald L. Mikovch and Wanda Jean Mikovch, his wife, recorded January 11, 1983, does not grant the Mikovchs an easement to Route 683. The deed states in relevant part:

> ACCESS to the subject property obtains by two routes: From Route 683 along or through lands now or formerly owned by HAWKINS, Ellis L., on the North per Deed Book 428 from Page 387, FARRACE, Thomas N. and Sharon L. on the North per Deed Book 396 at Page 206, HARTER, John R., III, and Jane B. on the South per Deed Book 469 at Page 290, COGLE, James I. and Margie L. on the South per Deed Box Q13 at Page 315, HUDLOW, Richard J. and Louise Jolly on the North, deed undiscovered, BROOKS, Jack B. on the South per Deed Book 386 at Page 070 and EASLEY, Louis T. and Bonita Carlson, per Deed Book U13 at Page 183 on the east, thence Southward

through lands of unknown ownership and status and continuing Southward through the subject property and continuing Southward through two properties south thereof to a third;

ACCESS to the subject property from Route 684 passes through the subject property on route to its ultimate destination within the aforesaid Western Union property, said road appearing to be in active routine use throughout. . . .

(Page two of deed, Defendants' Exhibit 1.)

The second access concerns a possible means of access, which is not a subject of this litigation.

The deed contains no words granting an easement, or words conveying an easement. There is no "granted to," "together with," or "hereby creates and establishes" language sufficient to create an easement. The language in the deed describes a way to get to the Mikovch property, but it does not grant the means by a right of easement.

Also, there is no evidence that an easement benefiting the Mikovch property can be found of record in the chain of title to any of the properties through which the claimed easement passes. Further, there is no evidence that any of the present or former owners of the properties through which the claimed easement passes took title with notice that such an easement existed for the benefit of the Mikovch property.

The 1903 deed was not offered into evidence. The Mikovchs' expert title examiner merely testified that the deed created a right of way to the Short Hill Mountain over an old roadway running through the present Brooks property for the benefit of Preston Phillips, a former owner of the Mikovch property. The Brooks property is distant from Route 683. It is adjacent to the Mikovch property. There is no evidence of what this "old roadway" was in 1903. In any event, it does not go to Route 683, and there is no evidence of where it commences or where it ends.

Neither the deed to the Mikovchs nor the 1903 deed expressly grants an easement from the Mikovchs' property to Route 683.

### III. Easement by Prescription

No evidence was presented as to when the gravel road came into existence or by whom it was established. The Mikovchs represented that, to the best of their knowledge, their predecessors in title used the gravel

road for access to Route 683 from the property, but no other evidence or testimony was offered in support thereof.

The general principles of law governing easements by prescription in Virginia are summarized in *Craig v. Kennedy*, 202 Va. 654, 657, 119 S.E.2d 320, 322, 323 (1961), as follows:

> In order to establish a private right of way over the lands of another by prescription, it must appear that the use of the roadway by the claimant was adverse, under claim of right, exclusive, continuous, uninterrupted, and with knowledge and acquiescence of the owner of the land over which it passes, and that such use has continued for a period of at least twenty years. *Powell v. Magee*, 191 Va. 315, 321, 60 S.E.2d 897, 900; *Williams v. Green*, 111 Va. 205, 207-08, 68 S.E. 253, 254.

> We have said many times that, "Where there has been an open, visible, continuous and unmolested use of a road across the land of another for at least twenty years, the use will be presumed to be under claim of right, and places upon the owner of the servient estate the burden of rebutting this presumption by showing that the use was permissive, and not under a claim of right." *Powell v. Magee, supra*; *Rives v. Gooch*, 157 Va. 661, 663, 162 S.E. 184; *Davis v. Wilkinson*, 140 Va. 672, 675, 676, 125 S.E. 700, 701, 702.

The Mikovchs acquired their property in December 1982. They have used the "gravel lane" and "woods road" for access to their property since acquiring it. In January 2002, the Mikovchs were put on notice that they could no longer use the "gravel lane" to access their property. See Mr. Mann's letter to Mr. Mikovch and Mr. Bond dated January 9, 2002 (Plaintiff's Exhibit 4). They have not used the "gravel lane" since then.

Therefore, the use of the "gravel lane" by the Mikovchs has not continued for the required twenty-year period. While tacking is permitted, there is no evidence of the use of the "gravel lane" by any predecessor in title to the Mikovchs. The Mikovchs' use of the gravel lane was permissive and not by a claim of right.

Therefore, the Court finds there is no easement created by prescription.

## IV. Easement by Necessity

In *American Sm. Business Investment Co. v. Frenzel*, 238 Va. 453 (1989), a case familiar to this judge, the Virginia Supreme Court stated:

> A right of way by necessity is based on the theory that, when a grantor conveys property, he does so in a manner which will allow beneficial use of both the property he conveys as well as any property he retains. This type of easement arises from an implied grant or implied reservation. *Middleton v. Johnston*, 221 Va. 797, 802, 273 S.E.2d 800, 803 (1981); *Fones v. Fagan*, 214 Va. 87, 90, 196 S.E.2d 916, 918-19 (1973); *Keen v. Paragon Jewel Coal Co.*, 203 Va. 175, 178, 122 S.E.2d 543, 546 (1961). It is essential to this theory that the necessity arise simultaneously with the conveyance. If the conveyance does not preclude the beneficial use of either the property conveyed or the property retained, an implied grant or reservation is unnecessary. The necessity cannot arise subsequent to the conveyance because "the necessity referred to is *the subjective necessity of the inference* that the parties so *intended at the time of the grant*" or reservation. 1 *Minor on Real Property*, § 98, at 133 (2d ed. F. Ribble 1928) (emphasis in original).
>
> To establish a right of way by necessity, certain conditions must be met. First, the land must have been under common ownership at some time and this unity of title must have been severed. *Middleton*, at 802, 273 S.E.2d at 803. The severance must have given rise to the need for the right of way. Reasonable need for the easement must be proved by clear and convincing evidence, and it cannot be established if other access is available, even though the other access would be less convenient. *Fones*, at 90, 196 S.E.2d at 918-19.

238 Va. at 456-57. See *Davis v. Henning*, 250 Va. 271, 276 (1995).

The Mikovchs' expert title examiner testified that all the land encompassed in the Mikovchs' property as well as the properties over which the claimed easement passes to Route 683 can be traced back to a common owner. However, he did not testify how the Mikovch property was created. More specifically he did not testify when a severance occurred that may have given rise to an easement by necessity over "the

road from state Route 683 that traverses the property owned by" Kiefer, Marino, Harter, Johnson, and Brooks.

There is no evidence that the Mikovch property was created by a severance from a larger parcel of land that extended to Route 683 at the time of the severance.

Without evidence of the circumstances of the severance creating the Mikovch property, there is no clear and convincing evidence that the severance gave rise to the need for the right of way.

For the above reasons, no easement was created by necessity.

## V. Easement over Reed Property

The Reed property does not lie in the path of the claimed easement from the Mikovch property to Route 683. Even if the Mikovchs were entitled to an easement from their property to Route 683, it does not give them an easement over the "border trail" where it traverses the Reed property just so an additional part of the Mikovch property could be better accessed.

There is no evidence to support an easement over the Reed property under any of the theories advanced by the Mikovchs.

## VI. Rulings in Relation to Issues Presented

As to the issues raised in the Amended Bill of Complaint, I rule as follows:

1. The deeds and other writings relied upon by the Mikovchs provide no basis for asserting easement rights or other legal rights to traverse the property of Kiefer; and

2. The Mikovchs are permanently enjoined from using the "gravel lane" or "gravel road" across the property of Kiefer.

As to the issues raised in the Cross-Bill filed by the Mikovchs, I rule as follows:

1. No easement by grant, necessity, or prescription, or by public road, has been created over the lands of Kiefer and the other Cross-Defendants for the benefit of the Mikovchs to Route 683;

2. No injunction will issue requiring Kiefer to remove the gate blocking the "gravel lane" or "gravel road" or to provide the Mikovchs with a key or other means of opening the gate;

3. The Mikovchs are not entitled to any injunctive relief requiring Kiefer to provide access to the "gravel lane" or "gravel road;" and

4. No attorney's fees and costs are awarded to any party.

Defendant Marino did not file responsive pleadings. Hence, the Amended Bill of Complaint is taken for confessed as to him. However, considering the rulings herein as to the other defendants, as a practical matter, taking the Amended Bill of Complaint for confessed as to Marino is of no benefit to the Mikovchs.